The next case for argument is 16-2-6-9-4, Freeman v. United States. Please stand by for a moment of silence. Ready whenever you are, Mr. Stephens. Thank you. May it please the court. I'm Richard Stephens representing the appellants in this case. I think this case really involves two interrelated questions. The first is whether or not the Forest Service made a final decision or not for purposes of ripeness. Did R&R receive a notice of appealable decision? They did not receive a document that said that. Right. The Forest Service was required to provide that. They received a written decision about their plan of operations. Asking for more information. That's correct. We treated that as an appealable decision because the regulation said any written decision. It didn't say final. It didn't say anything. It said a written decision regarding a plan of operations. I think whether or not we appealed that is not nearly as important as whether or not the Forest Service made a final decision. We cited the statement by the district ranger who said in the appendix at page 248 that he could not approve the plan. And urged Mr. Freeman to submit a new application for a plan of operations. He also suggests that some paperwork or some application would have to be made with the BLM. Did R&R ever do anything and reach out to the BLM? Yes. They notified R&R that paperwork had to be filed with the BLM. That was not done. But the problem is that is an easy solution. Why is that a problem? Pardon? Why is it a problem that that's an easy solution? That is not the problem. The real problem is that we also have to have a pilot plant proposal which the Forest Service could not identify what that was. And we believe that it is in fact... You know what a pilot plant is? It can be completely different. Some pilot plants last for six months, years. Some last for weeks. Some last for hours. Some do hundreds of thousands of tons of material. Some do much smaller... So you had a broad spectrum of possibilities. That's correct. We've asked them what they wanted. In this case they couldn't identify what it was they wanted. And so... Why should they hire a mining engineer to design your pilot plant so they know what the needs are to do a demonstration project? Don't they want to know what potential pollution there is? What the transportation problems are to the pilot plant? That kind of thing is going to show them that. Well, a pilot plant normally would not show them transportation kinds of things. It would just show how the material is smelted and processed in the plant. But the point that we'd like to make is that R&R believes that this is not a precursor to actually developing these particular claims. When you're smelting, don't you need fuel? Absolutely. Where does the fuel come from? The proposal... You're not going to burn charcoal, are you? Pardon? You're not going to burn charcoal. Well, you're adding a wood product and creating carbon for the smelting process. Yes, there are various stages to this particular project. But our concern is that we were never allowed to question through the Court of Federal Claims to do discovery, have a fact-finding hearing on whether in this context, the context of this particular case, whether a pilot plant proposal was reasonable, whether it has ever been required to the Forest Service. The Forest Service has never identified it. I understand what you're saying. I understand that your client feels probably that that's a big impediment to the business. I understand that. But the question is whether there's a final decision. And as I understand it, there were two agencies that were supposed to be paperwork, were supposed to be submitted, two plans were supposed to be submitted. And I just don't see that here. I don't understand how you can possibly have a ripe case when the BLM paperwork wasn't even submitted. How can there be a taking when all the initial requests and plans weren't even provided to the agencies that needed to just make the decision? Well, so, Your Honor, if the answer to the question is it's not right because papers were not submitted to BLM. Well, I mean, what are we supposed to do? Oh, it doesn't matter. There's certain paperwork that has to be provided and requests and different things that have to be provided to the agencies so they can make a decision, a final decision. And they weren't able to do that here because the new plan was not submitted and also nothing was submitted to BLM. Well, I guess the question is, should we be able to have the court look at the requirements requested by the agency besides just the affidavits submitted? What did we do discovering? What did you specifically ask the Court of Federal Claims to let you discover? What facts? We asked for discovery. Yeah. What specific facts did you tell the court you expected to be able to discover? We did not identify specific facts. We made a request for discovery. There was nothing on the other side saying you need to limit your request. I think the court does have jurisdiction to limit discovery at the stage of a motion to dismiss. But the question is, does the court have the authority to decide these facts on rightness without having any discovery or without an evidentiary hearing? And we have cited the cases from around the country in various circuits saying that when these facts are disputed, that there needs to be an opportunity for the plaintiff to prove it. But you don't dispute that the government, the service asked for a pilot plan, right? No, we do not dispute that. What we dispute is whether that has a basis either in law or reason or fact. Yeah, you think it was some kind of pretext. Absolutely. We do. And I think that we should have been able to pursue that before the Court of Federal Claims. What did you tell the Court of Federal Claims was the basis for your thinking that was a pretext that you could discover with discovery? So we did not identify certain discovery either techniques or questions. But the one thing that we did make clear, and I think it was in our briefing and in the declaration of Mr. Freeman, is what is the factual basis? There is a statement by one of the Forest Service personnel, Mr. Johnson, saying, I talked to experts and that's what they suggested. We don't know who these people are. We don't know what their level of expertise is. We don't know, again, whether the Forest Service has ever made this kind of requirement of anyone of any size. And I think that that is relevant to whether this is a pretext or not. Did you look? Yes, we could not find any examples of the Forest Service ever requiring a pilot plant test for any kind of a project. And so that is the further reason why we think this was, in fact, a pretext. But I think it is important that we should have been able to look beyond the surface of the standards. I'll ask your opposing counsel that question. That's fine. We have never had that asserted by the defense that, oh, yes, we normally do this and here are the examples ever. The court, this court, in the Nuance Communications case, I think made clear that when we're talking about motions to dismiss, the trial court decision should not be given any deference when there's been no evidentiary hearing. I think that this court in the Cedars-Sinai Medical Center case hinted that discovery was appropriate in a motion to dismiss because the court noted that motions to dismiss when there are challenges to the jurisdictional facts can be disproven or the facts can be proven with deposition testimony. Again, this we were not allowed to do. We would contend that, first, there was a final decision in that the decision was no pilot plant proposal, no mining. So we think that that is fine. But even aside from that, we contend that the opportunity to do discovery is critical. Did your client formally refuse to build the pilot plant? There isn't a proposal to build a pilot plant. There's nothing to refuse. So the service didn't say you should build a pilot plant? You should, but we have no idea what it is. And when we asked what it is, what do you want, get some ideas, we can't tell you. We can't tell you anything about how big it should be, how long it should last. Did your client say, so I'm not going to build it? It says, I don't know what to build. And it is not part of my proposal. Did your client respond to the other requests made in the Forest Service July 24, 2012 letter? Like there were requests about maybe roads and different, there were other things that were requested besides the pilot plant, right? Yes, and again, those things were not the hurdle. So your client did not respond? No, we were already in court. Mr. Freeman is a mining engineer educated at the Colorado School of Mines. That's correct. He knows what a pilot plant is? Yes, he does. And the problem is that there's a wide variety of what a pilot plant can be. How big it is, whether it's on-site, whether it's off-site, whether pilot plants operate in other countries. He could have gone ahead and done something or refused, one or the other, yes? You're right, he could have done something. But that would have put him on what we believe to be an endless loop, considering the history of the handling of the mining claims. Can I just go back to Judge Stoll's question? Was your answer to her question, what I heard, was the reason your client didn't respond, you said, well, we were already in court? Is that what I heard? No, I'm saying we were already in court. But is that the answer, a responsive answer to why you didn't respond to the other things the Forest Service asked you for in the requesting letter? The answer is the Forest Service was requiring something that we couldn't do. And so that was the problem that we needed the court. That's the power plant, but what about the other stuff? I understood Judge Stoll's question to be with regard to the other matters, other questions that the Forest Service was asking about. Like the water source. That's right. And we had information, we believed we had information in there. We were also concerned. I don't understand. The question was, did you respond and answer those questions? I think you said no. And the question is, why not? Because we had a hurdle that we couldn't keep. And we had a hurdle that we couldn't meet, which is basically the pilot plant. If we had provided all this information. Pardon? So you just blew off everything else? If we can get the pilot plant issue resolved, we can easily solve the other problems. Thank you. Why don't we retain the rest of your rebuttal time and we'll hear from the government. Thank you. May it please the court. Avi Kupfer for the United States. Mr. Kupfer, has the United States ever required a pilot plant before? Although I'm not prepared with specific examples, I have our authority from the Bureau of Land Management that a pilot plant is a fairly common requirement in terms of proof of concept when we're talking about scaling from a bench test to full production. And it's part of the normal back and forth between regulators and an operator after an initial application is submitted. In the normal course, an operator will work with a regulator to answer some of the questions that the regulator believes necessary to be answered under its regulations. In this case, the Forest Service is charged with minimizing adverse environmental impacts to National Forest Service resources in approving any plan, as well as doing NEPA review. And it just didn't have the information it needed to continue analyzing this plan to do those requirements. What I don't understand is that he came back and he says to you, maybe I'm reading the record wrong, that could you explain what specifications of the pilot plant would satisfy the service. And your answer to him was essentially, that's your problem, not ours. Why is that kind of not an unusual, unhelpful response? So two answers to your question, Your Honor. First, I believe there's a point that Judge Wallach made is that mining rights are self-initiated and it's the responsibility of the operator to come forward with an application that the Forest Service believes satisfies the regulatory requirements. And I think the second response to your question is that that's not exactly how the record reads in this particular case. The Forest Service sent an initial letter to Mr. Freeman detailing several deficiencies in the plan, not just the pilot plant requirement, but the lack of information about the source of water for the processing facility. And there was no information in the proposal on whether Mr. Freeman had sought approval from BLM to construct a processing facility on public lands, as the plan proposed. Then less than two months later, the district ranger and the area mining geologists, who are the primary regulators responsible for analyzing this plan, met with Mr. Freeman to answer questions and to provide clarification to any questions that Mr. Freeman had. And according to their declarations, Mr. Freeman said during that meeting that he didn't believe a pilot plant was necessary because he had already proven to himself that this process works. After that, when Mr. Freeman attempted to appeal that letter requesting additional information about his plan, the forest supervisor and the regional forester both encouraged Mr. Freeman to continue communicating with the district ranger to answer any questions he had about what was required in that pilot plant. I would add that in the area mining geologist memo attached to the district ranger's letter, there were citations to mining handbooks, two different mining handbooks, explaining the need for a pilot plant in a complex 30-year mining proposal like this, citations to the Forest Service handbook explaining what needed to be shown during the development stage of a processing facility in order to scale to operation. So there was plenty of information at Mr. Freeman's disposal about what the Forest Service was looking at here. Where is that in the record? I want to take a look at that. That would be, so the initial letter is... The attachment is what I'm, the geologist attachment. It's in appendix 291. 291? That's correct. Thank you. That's the initial memo and then the second memo is sent in 2012. I'm sorry, in 2013 is it appendix 310? 310. So 291 and 310. Thank you. Your Honor, the central question here is whether the Forest Service has reached a final and authoritative decision on the extent to which Mr. Freeman can develop his mining claims or if there's further administrative process available to Mr. Freeman that will clarify the extent to which Forest Service regulations restrict, if at all, his ability to develop those claims. And this Court's cases consistently hold that a regulatory takings claim, excuse me, is not right when there's a process available to an operator that the operator does not engage in. As the Court of Federal Claims found, Mr. Freeman would like this Court to engage in a full-throated analysis of whether, of the wisdom of the pilot plant requirement. But this isn't an APA arbitrary and capricious challenge. Mr. Freeman is well within his right to bring such a challenge after the Forest Service has reached a final decision on the extent to which Mr. Freeman can develop his mineral rights. In fact, he brought an APA arbitrary and capricious challenge on his original claims after BLM determined that he had not made a valuable mineral discovery. At this stage, the only question is whether there's an administrative process available to the claimant that they can participate in to obtain a more definite statement on the economic impact of the regulations. The government understands that Mr. Freeman is frustrated with this process and does not believe that some of the things that the agency, I'm sorry, that some of the things that the Forest Service would like to see in a plan are necessary, that he has, as I believe he said, proved it to himself. But this Court gives wide latitude in agencies in determining what additional information is necessary under its regulations in order to continue processing a mining plan. And as stated earlier, there are several regulations here that implicate this bare-bones proposal where the Forest Service, for example, in the 2013 letter, the Forest Service asked for more information on exactly how the proposed stream crossings would work. This is just one example where without having a full understanding from Mr. Freeman of how those stream crossings would work, it would be impossible for the Forest Service to analyze the impact on the banks, on the water quality. These are all things that we'd need to do before approving this plan under NEPA. And without that information, the Forest Service simply can't move forward in analyzing this proposal. The Court of Federal Claims will not be able to adjudicate R&R's taking claim until Mr. Freeman gives the Forest Service information, basic information it needs to continue processing his mining application, like proof from the Bureau of Land Management that Freeman may construct an ore processing facility on public lands. Until then, the type and intensity of development permitted under the Forest Service mining regulations and therefore the economic impact of those regulations on these mining claims will remain uncertain. The United States therefore respectfully requests that this panel affirm the decision of the Court of Federal Claims and if there are no further questions. Thank you. Thank you, Your Honor. The argument by opposing counsel about pilot plants being a common proof of concept requirement, the problem is we don't have any examples. We've never had any examples. In the years of litigation, we've never had examples. What did you do to look? We made inquiries. Yes. And could not find, including talking to former Forest Service personnel, asking has this ever been required, and could not find it. That's the kind of evidence that I think we ought to be able to ask the government under oath in discovery. Did you look at the references, like the Forest Service handbook that government counsel referenced and might be mentioned, page appendix 293? Yes. And if you look at, for instance, that Forest Service handbook, there is nothing in there about pilot plants. What about the other? I think he mentioned there were two resources. Yes. And there is not a reference to pilot plants. That's the problem. That's why we believe this is being applied to the Freeman claims or the R&R claims uniquely. Really? So your client proposes to dig a tailings pond, right? Pardon? Your client proposes to dig a tailings pond. Isn't that correct? Yes. And what's he going to do with that rock, the aggregate that's extracted? Well, so if you're talking about the slag, if you're talking about slag, that slag, his proposal was to... No, I'm not. I'm talking about when you dig a tailings pond, you extract rock in order to do that. What's he going to do with it? I don't have it in front of me, Your Honor. Nor does the government. That's one of the things they reference. Absolutely. If this was analyzed previously, was analyzed previously extensively in regard to the Freeman claims, and he made reference to the fact that these are basically following the same Freeman when they were analyzed, both in terms of analysis by the BLM and analysis by the Forest Service during an environmental impact statement. These were thoroughly analyzed. But back to Judge Stoll's question, I would encourage the court to look at Appendix 330, which talks about what you do for metallurgical issues in mining, and it references you do bulk samples, which Mr. Freeman has done. It doesn't talk... There's nothing in there about pilot plants. And that is our problem, is that the Forest Service, we believe, came up with an excuse to be able to not process... But that's about the drilling of shafts and the determination of the ore body. Saving bulk samples from shafts or drills for metallurgical testing... Right, for metallurgical testing. That's the only reference to metallurgical testing. And that's what the pilot plant is supposedly about, metallurgical testing. That's all that the manual gives us. And so that is why our position is that we should have been able to discover, have a hearing on this issue to determine whether or not we have a final decision. And again, it appears to be a final decision, no mining without a pilot plant. We can't tell you what that is. It's not part of your proposal, but we're going to require it anyway. And we are in violation of our own rules for requiring that. Again, as we spelled out in the briefing, they had 30 days to do that. They didn't do anything for 14 months. Okay, we have the argument. We thank both sides. Thank you.